————o————

## No. 6143.

## WILLIAM B. BLOOMFIELD vs. WM. B. THOMPSON, COMMISSIONER, ETC., ET AL.

### Syllabus.

1. An ordinance by a municipal corporation violative of the provisions of a legislative act, is void.

2. Where all the provisions of an ordinance are interdependent, the invalidity of any one part carries with it the invalidity of the whole.

3. Where the provisions of a contract between a municipal corporation and its stockholders, are embedded in a legislative act and that legislative act itself is embedded in the State Constitution, the one and the other (constitutional provision and legislative act,) must first be undone before the validity of such provisions can be questioned by the municipality as having been *ultra vires.*

4. Where a Statute requires that the members of a municipal board shall be appointed by the Mayor, with the consent of the Council, a municipal ordinance creating an *ex officio* member of such board is null and void.

Appeal from the Civil District Court for the Parish of Orleans, Division "E," No. 103,158. Hon. G. H. Theard, Judge.

Chas. Rosen, for plaintiff intervenor, appellant.

S. D. Hill attorney.

I. D. Moore, City Attorney, J. J. Reilley, Assistant City Attorney, for defendant and appellee.

His Honor, JOHN ST. PAUL, rendered the opinion and decree of the Court, as follows:

Plaintiff is the holder of certain obligations of the City of New Orleans, known as "Public Belt Railroad Bonds," issued under the provisions of Act 179 of 1908; which act is imbedded in the Constitution of the State, as an amendment thereto, and chained to the Federal Constitution by an express declaration that its provisions "shall constitute a contract" between the State of Louisiana, the City of New Orleans and the holders of the bonds issued thereunder.

He seeks to enjoin the execution of a certain ordinance of the City of New Orleans, known as No. 74 Commission Council Series, as being in conflict with the aforesaid contract, statute and constitutional provision.

The statute provides in substance that the City of New Orleans shall construct and operate its Belt Railroad System, through a Board or Commission, the members of said Board to be **appointed** by the Mayor with the consent of the Council, its powers, duties and functions to be prescribed by the City.

The ordinance provides in effect, that the Commissioner of Public Utilities of the City of New Orleans, shall be **ex officio** a member of said Board and Acting President thereof; and **in his last named capacity**, it gives him "active charge, management and control of the detail operations of the Belt Railroad System." (His official signature, says the ordinance, in all matters relating to said Public Belt Railroad shall be "Commissioner of Public Utilities, Acting President Public Belt Railroad Commission.")

The authority vested in the Commissioner of Public Utilities being vested in him in his capacity of Acting President, it follows that the provisions in relation thereto are necessarily dependent for their validity upon the validity of his appointment as such. So that the ordinance must stand or fall as a whole. **Sublato principali tollitur adjunctum.**

But the mere statement of the case makes it manifest that the ordinance violates the provisions of the Statute, since the Commissioner of Public Utilities becomes a member of the Board by **virtue of the ordinance** instead of by appointment of the Mayor as required by the Statute.

The ordinance is therefore void as a whole.

It would serve no good purpose to examine the point raised by the defendant, to-wit, that a municipal corporation can barter away no part of its governmental functions. Suffice it to say that until the people of Louisiana undo their constitutional provision, and the Legislature repeals the Statute, the ultra vires aspect of the matter cannot be urged by a municipal corporation, bound by the one and the other irrespective of the contractual features therein contained.

It might perhaps suffice to close this opinion here, but as this might lead to a wholly erroneous construction being placed thereon, it may as well be stated at this time that had a majority of the Court been of opinion that Act 179 of 1908 vested absolute and sole control of the Belt Railroad in the Board of Commissioners, exclusive of any further authority over the same in the City itself, or that the right of the City to reorganize the Board of Commissioners was exhausted when the bonds were issued, the Court would in that event have rested its opinion on those grounds, as logically it should have done had such been its views. But the writer and Judge Godchaux were not inclined to such opinion; Judge Claiborne differed with them on these points.

It is therefore ordered that the judgment appealed from be reversed and it is now ordered that a peremptory injunction issue herein restraining and prohibiting the defendants, Wm. B. Thompson, Commissioner of Public Utilities, and the City of New Orleans, from executing or enforcing the provisions of Ordinance No. 74 Commission Council Series, which ordinance is hereby declared null and void. It is further ordered that the City of New Orleans pay all costs.

Claiborne J.—I concur in this opinion and decree, and file additional reasons.

## Concurring Opinion.

By His Honor, Charles F. Claiborne:

My opinion is that the Ordinance No. 2683, contains two essential features. First, that the Public Belt Railroad Commission shall be composed of sixteen citizens to be appointed by the Mayor, eleven of whom shall be selected from the different commercial exchanges of the City of New Orleans, and five from the City at large, with a tenure of office fixed at sixteen years; and second, that said commission should have a right to select from its members a President pro tem, who should "have active charge, control, management, and supervision of the business of said commission, subject to direction of said commission."

The commission was thus composed in order to command public confidence by placing the railroad under the care and management of representative business men of the community who expected to use the road and were most interested in its success; and to remove the railroad from the danger and vicissitudes of political changes in the City administration. The personnel of the commission became an important and essential part of the commission.

But the commission needed money to build the road. Therefore the Legislature prepared Act 179 of 1908, which was afterwards adopted as an amendment to the Constitution of the State. This act authorized the City of New Orleans to issue $2,000,000.00 of Bonds to be styled "Public Belt Railroad Bonds of the City of New

Orleans," for the payment of which the net revenues of said Railroad were pledged over and above the obligation of the City, this act recognized the existence of the ordinance 2683 creating the Belt Road Commission by specifically referring to it. The title of the act reads:

> "To authorize the City of New Orleans to issue $2,000,000.00 of five per cent bonds; to provide for the disposition of the proceeds thereof through such Public Belt Railroad Commission as the City of New Orleans may have heretofore organized or may hereafter organize, the members of which shall be appointed by the Mayor of the City of New Orleans, etc."

And Section 7 provides:

> "That the City of New Orleans shall construct, equip, maintain and operate said Public Belt Railroad system of the City of New Orleans through and by means of such Board or Commission as may have been, or may be, organized by the City of New Orleans, the members of which shall be appointed by the Mayor of the City of New Orleans with the consent of the Council, the powers, duties, and functions of which shall be prescribed by the City of New Orleans. The control, administration, management and supervision of the construction, maintenance, operation and development of the Public Belt Railroad of the City of New Orleans shall be exclusively vested and remain in such Board or Commission, etc."

It is apparent therefore that this Act of 1908, afterwards dignified as a constitutional amendment, was passed to carry out the Ordinance No. 2683 and was ancillary thereto. The prospectus used for negotiating and recommending the bonds held up both to the confidence of the buyers.

Section 8 of the Act provided: "That all the provisions of this Act shall constitute a contract between the

holder of the bonds issued thereunder, the State of Louisiana, the City of New Orleans and the Board of Commissioners of the Port of New Orleans.''

On January 21st, 1913, the Council of the City of New Orleans passed Ordinance 74, Section 1 of said Ordinance makes the Commissioner of Public Utilities of the City of New Orleans a member of said Commission.

It also provides that said ''Commissioner of Public Utilities of the City of New Orleans shall be acting president of said Commission. He shall have active charge, management and control of the detail operations of the Belt Railroad system, and the head of the several departments of accounting, operations, and engineering, shall report to him and take instructions from him. He shall report to the Commission and keep same fully advised of all matters falling within his management and shall be the agent through whom the general directory powers of the Commission shall be executed.''

I think that this Ordinance 74, which makes the Commissioner a member of the Belt Road Commission is a violation of Act 179 of 1908, which provides that members of the Commission shall be appointed by the Mayor.

I think it also violates the contract with the bondholders who purchased the bonds upon the faith of two promises which were held out to them, first, that the Commission should have the right to elect its own vice-president from among its own members, and second that the vice-president selected by it should have the active charge, management and supervision of the business of said Commission, subject to the direction of said Commission,'' in other words that the railroad should be at all times under the uncontested, undisputed, and undivided management of the Commission. Ordinance 74

— 325 —

designates who the vice-president shall be, and vests him with the "active charge, control, management of the detail operations of the Belt Railroad system" and strikes out the important reservation contained in Ordinance 2683 "subject to the direction of said Commission." The effect of such elimination is clearly in my mind to constitute him in sole "active charge" of the road.

Act 179 of 1908, grants the City of New Orleans the power to construct and operate a public belt railroad system by means of such Board or Commission as may have been or may be organized by the City of New Orleans, the members of which shall be appointed by the Mayor of the City of New Orleans, with the consent of the Council, the powers, duties and functions of which (Commission) shall be prescribed by the City of New Orleans. The pronoun "which" refers to the "Commission" and not to the "members" thereof. The Council was clothed with power of defining the powers and duties of the "Commission" alone, and not of its members.

Otherwise we must presume that the legislators were ignorant of the rules of grammar. The Commission alone, and not the Council, was to define the duties and functions of its members and officers, otherwise the railroad would have been administered by the Council and not by the Commission.

The difference between the two ordinances is, that by Ordinance 2683 the Railroad Commission controlled and administered the road through a president **pro tem** elected by itself from one of its members and subject to removal by itself if he did not give satisfaction or if his views of his duties did not agree with theirs, while under Ordinance 74 the office of "President **pro tem**" is abolished and the Board must administer through a member named by the City Council and made by it

"Acting President" and not subject to removal by the Board. This must be conceded to be a material difference indeed. In other words it makes the "Acting President" the creature of the Council and independent of the Commission, or at least indifferent as to whether the Commission likes him or not. Such is the palpable object of Ordinance 74, otherwise there was no motive or reason for its enactment. The defendant in this case was a member of the Commission and had been elected president pro tem of the Commission under Ordinance 2683. If it was not intended by Ordinance 74 to curtail the powers of the Commission and to enlarge those of the "Acting President" why enact Ordinance 74?

Can it be seriously argued that the Commission continued to retain the management and control of the railroad, when Ordinance 74 creates an officer for it who, by virtue of the very letter of the Ordinance, "shall have active charge, management, and control of the detail operations of the Belt Railroad System" especially when the words of the old Ordinance 2683 "subject to the direction of said Commission" have been industriously stricken out and evidently with an object.

Any contrivance by which the exclusive "control, administration, management and supervision of the railroad by the Commission" is affected is a glaring violation of the Act of 1908, and of the Constitution.

Not only is the Act 179 of 1908, a contract between the parties named in said Act, but it is a contract with the people of New Orleans. They were told that they were the happy possessors of a most excellent Railroad Commission; that said Commission was composed of the best people of this City controlling the business of the City and offering the best guarantees for intelligence, business ability, and honesty; but that because said Commis-

sion needed money to build the road they were asked by their vote to authorize the City to issue $2,000,000.00 worth of bonds to be spent by that Commission and to tax themselves to pay said bonds in case the revenues of said road were insufficient to pay the bonds; to vote for a constitutional amendment embodying in terms a contract to protect them.

There was no necessity of the specific declaration in the act that it formed a contract. It was a contract without those words. It would certainly be a violation of that contract for the city by ordinance to name a member of that Commission; to make him vice-president of the Commission, when the contract said that the Commission should elect its own vice-president; to confer the powers of administration of the road upon the vice-president named by the Council, when the contract provided that the Commission should have sole control. It may be that the people would not have voted for an issue of $2,000,000.00 of bonds and an additional tax, had they been told that the Council could so amend the law as to assume the control themselves.

For these reasons I am of the opinon that Ordinance 74 is null and void.

In so holding I am supported by the Supreme Court of this State in the case of State ex rel. Saunders vs. Kohnke, 109 La., 838 (851 to 868).

Opinion and decree, June 15th, 1914.

Rehearing refused, July 17th, 1914.

Writ granted, October 24th, 1914 [134 La., 923].